1 | J. BRUCE ALVERSON, ESQ.
Nevada Bar No. 1339
2 | KARIE N. WILSON, ESQ.
Nevada Bar No. 7957
3 | **ALVERSON TAYLOR MORTENSEN & SANDERS**
4 | 7401 W. Charleston Boulevard
Las Vegas, NV 89117
5 | 702-384-7000 Phone
702-385-7000 Fax
6 | Attorneys for Plaintiffs

7 | JOHN M MCLAUGHLIN, ESQ.
(*pro hac vice*)
8 | **GREEN, MILES, LIPTON & FITZ-GIBBON, LLP**
9 | 77 Pleasant St; P.O. Box 210
Northampton, MA 01061-0210
10 | 413-586-0865 Phone
413-584-6278 Fax
11 | Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DISH NETWORK, LLC, a Colorado Limited Liability Company, ECHOSTAR TECHNOLOGIES, LLC, a Texas Limited Liability Company, and NAGRASTAR, LLC, a Colorado Limited Liability Company, | CASE NO: 2:10-cv-01374-PMP-LRL  **JUDGMENT AGAINST DEFENDANT DARRYL POLO** |
| Plaintiffs | |
| v. | |
| DARRYL POLO, aka "THEPIMP" and aka "DJP" dba www.fta-spot.com, www.ftapimps.com and The Media Creative Group ("TMC") | |
| Defendant | |

Plaintiffs, DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar L.L.C. (collectively, "Plaintiffs") having filed their Complaint, demanding certain relief against the

1

1  Defendant Darryl Polo (sometimes referred to as the "Defendant" or "Polo"), as appears more fully
2  in their prayer for relief contained therein; the Plaintiffs and the Defendant Polo having agreed upon
3  a basis for the adjudication of the matters alleged in the Complaint and for the entry of a judgment in
4  this action against Polo based upon a stipulation, which is filed with the Court, and after due
5  deliberation being had thereon, it is:

**ORDERED, ADJUDGED AND DECREED** that final Judgment in favor of the Plaintiffs and against the Defendant Polo is hereby granted, ordered, and entered as follows:

I.  Pursuant to Title 17 U.S.C. § 1203(c)(3)(A)  and pursuant to Count I of the Plaintiffs' Complaint the Plaintiffs are awarded $250,000.00 in monetary damages from Polo for his violations of 17 U.S.C. §§ 1201(a)(2).

II. The Court finds that that the judgment amount is reasonable pursuant to 17 U.S.C. § 1203(c)(3)(A) which provides statutory damages in the amount of up to $2,500 for *each* violation of 17 U.S.C. §§ 1201(a)(2).

Pursuant to Title 17 U.S.C. § 1203(b)(1) Polo and all other persons acting or claiming to act on his behalf or under Polo's direction or authority, and all persons acting in concert or in participation with Polo are hereby **ENJOINED** from:

1. Manufacturing, importing, offering to the public, providing, modifying, selling or otherwise trafficking in *any* FTA technology whether the devices in question are modified or unmodified and *any* technology for use in *any* type of control word sharing scheme or key sharing scheme (sometimes referred to as IKS, EKS, or SKS) whether the devices in question are modified or unmodified.

2. Manufacturing, importing, offering to the public, providing, modifying, or otherwise trafficking in any so called "Free to Air" (FTA) receivers, internet-enabled FTA receivers, dongle-adapted FTA receivers that have been modified without authorization,

ALVERSON, TAYLOR, MORTENSEN & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

any DISH Network satellite pirating device *regardless of form*, *including pirate software*, or any other technology, product, service, device, component, or part thereof, that:

    a. is primarily designed or produced for the purpose of circumventing the encryption protection contained in the software on NagraStar's smart cards or contained within EchoStar Technologies' receivers or any other technological measure adopted by DISH Network and/or EchoStar Technologies and/or NagraStar that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming;

    b. has only limited commercially significant purpose or use other than to circumvent DISH Network's encryption access control protection or any other technological measure adopted by DISH Network and/or EchoStar Technologies and/or NagraStar that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming;

    c. is knowingly marketed by Polo and/or others acting in concert with him for use in circumventing DISH Network's encryption access control protection or any other technological measure adopted by DISH Network and/or EchoStar Technologies and/or NagraStar that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming.

3. Assembling, modifying, selling, advertising, marketing, possessing, transporting, and/or distributing through any means any FTA receiver or internet-enabled FTA receiver or dongle-adapted FTA receiver that has been modified without authorization or any other electronic, mechanical, or other devices, including FTA receivers, internet-enabled FTA

1    receivers or dongle-adapted FTA receivers that have been programmed with pirate

2    software, the design of which renders them *primarily useful* for the purpose of the

3    unauthorized interception of DISH Network's signals.

4.   Assembling, modifying, selling, advertising, marketing, possessing, transporting, and/or distributing through any means any DISH Network satellite pirating device *regardless of form*, including pirate software, or any other technology, product, service, device, component, or part thereof, that is *primarily useful* for the purpose of the unauthorized interception of DISH Network's signals.

5.   Assembling, modifying, selling, advertising, marketing, possessing, transporting and/or distributing through any means any type of FTA receivers, internet-enabled FTA receivers or dongle-adapted FTA receivers, where Polo or those acting with Polo are:

   a. programming the FTA receivers, internet-enabled FTA receivers or dongle-adapted FTA receivers with modified FTA/IKS software or other piracy software before distribution to the receiver customers; and/or

   b. distributing, in any manner, modified FTA/IKS software or other piracy software to the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers, including, but not limited to, distributing the modified FTA/IKS software or other piracy software by e-mail attachments or distributing the modified FTA/IKS software or other piracy software by delivering the software contained on a software or holding device; and/or

   c. directing, in any way, the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers to piracy websites, piracy forums, and/or piracy chat rooms where the

        modified FTA/IKS software or other piracy software is available ("pirate websites");

    d.  utilizing third parties such as so-called "installers" to effectuate having the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers' receiver ultimately programmed with modified FTA/IKS software or other piracy software;

6. Assembling, modifying, selling, advertising, marketing, possessing, transporting, and/or distributing through any means any DISH Network satellite pirating devices which violate the provisions of this Order.

7. Subsidizing pirate websites, including subsidizing the pirate websites through advertising on the pirate websites.

8. Utilizing website hyperlinks back and forth between any websites operated or controlled by Polo and the piracy websites.

9. Selling or distributing peripheral devices which are of assistance to the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers to effectuate the unauthorized interception of DISH Network signals, including, but not limited to, an 8PSK board, which device is designed to effectuate the receipt of Dish Network's signals in a high-definition mode, and satellite dish antennas which are designed to receive premium channel satellite signals as opposed to true FTA signals.

10. Operating the websites www.fta-spot.com and www.ftapimps.com.

11. Operating any website Polo controls or operates in any manner such that the operation would violate other terms of the injunctive relief set forth herein.

. . .

12. Engaging in any activity which would violate the terms of the injunctive relief set forth herein while utilizing websites not in Polo's control, including, but not limited to, such websites as EBay and Craigslist.

III. The Court finds that that the terms of this Injunction are reasonable and justifiable pursuant to Title 17 U.S.C. § 1203(b)(1) which provides that the court may "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" and/or pursuant to the equitable considerations allowing for the issuance of a permanent injunction through Fed. R. Civ. P. 65.

IV. The Court finds that that the $250,000.00 judgment amount is non-dischargeable in bankruptcy proceedings pursuant to the provisions of Title 11 USC § 523(a)(6) in that Polo's actions amounted to willful and malicious damage as to the Plaintiffs' property

V. The Court finds that Polo has irrevocably forfeited to the Plaintiffs any right, claim or interest in any of the evidence, inventory and any and all of the materials seized by the Plaintiffs pursuant to the civil seizure order entered in this civil action, or otherwise given by Polo to Plaintiffs.

VI. Post-judgment interest shall accrue on the stipulated judgment amount pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

Dated this _ 29th day of July, 2011.

*/s/ Philip M. Pro*

PHILIP M. PRO, UNITED STATES DISTRICT JUDGE

n:\bruce.grp\z-client\18888\pleadings\mtn stipulated judgmt order.doc